Good afternoon, Your Honor. Good afternoon. Ian Barnes on behalf of the Appellant Albert Church. May it please the Court and my colleagues in the State. In order to prove Mr. Church guilty of delivery of a controlled substance by accountability, in addition to proving the delivery itself, the State had to prove that 1. Mr. Church aided, abetted, agreed, or attempted to aid on the planning or commission of the offense, and 2. That he shared the concurrent specific intent of the principal, J. Miller. The record before this Court does not prove either of those elements beyond a reasonable doubt. So I would urge this Court to reverse the judgment of the Supreme Court and vacate Mr. Church's conviction. Excuse me. On the first element, Mr. Church's conduct in this case was giving the phone number of J. Miller to Jessica James and telling Miller, I've given your phone number to a stranger they might be calling. As far as the record substantiates, that was the end of Mr. Church's involvement. The record substantiates, and this was a stipulated bench trial, there are no facts in context, the record substantiates that Jessica James contacted Miller on her own. Miller went to to cater with a friend, Chris Miller, no relation, to obtain the heroin. He then returned to Effingham, picked up James, drove to the bank, she withdrew money, and they proceeded to her house where the transaction ostensibly occurred. Nothing in the record substantiates that Mr. Church went with Miller to cater, that he went with Miller to the bank with Jessica James, that he went to her home, and nothing substantiates that he was involved in the plan. After simply giving James Miller his phone number, that is the end of his involvement. And there's also no evidence that Mr. Church and Miller ever discussed the price of the heroin at the exchange, how they were going to procure the heroin, when they were going to procure it, where they were going to procure it, where the delivery would take place. There are simply no facts in the record that substantiate Mr. Church's involvement past giving him the phone number. And I would suggest to this Court that Mr. Church's guilt, if we can call that, is guilt by association. He knew Miller, he knew how to contact him, and that is the end of his involvement, and I would suggest that that is not sufficient to prove that element beyond a reasonable doubt. However, even if this Court decides that that element was proven beyond a reasonable doubt, the second element, whether Mr. Church shared the concurrent specific intent, was not established. And the State can prove that in two ways, either by establishing shared intent or a common criminal design. And I would suggest that the record is lacking on both those points. Excuse me. First off, and some of these points are very similar to my first point, nothing in the record suggests that Mr. Church had any involvement in actually arranging for James Miller to meet. Nothing suggests he went along with Miller at any stage of the process, and nothing suggests that he had any idea about any of the details of the transaction. And my point for mentioning all this is that he had to have the concurrent shared intent with Miller. And at the time, Mr. Church did what he did, which was give the phone number of Miller to Jessica James. She had not even spoken to Miller. Therefore, Miller could not have possibly formed the intent to commit this crime at that point, which would make it impossible for Mr. Church to share that intent that did not exist. And without some evidence of his continued engagement in the planning or commission of this offense, it simply makes no sense to say that he shared the intent of Miller to deliver a controlled substance. Second, as to the common criminal design point, there isn't any evidence that there was a common criminal design. Nothing in the record indicates Mr. Church and Miller had ever dealt drugs in the past together. In fact, the Facebook messages from Mr. Church and Jessica James going back into the middle of 2013, approximately seven, eight months before this transaction occurred, she had previously asked him for help in obtaining drugs, and he had told her, I don't know anyone. No one can get you anything. I'm sorry. If Mr. Church and Miller had some sort of ongoing arrangement, they had some sort of criminal design, his first thought would have been to say, yes, talk to this man. He can help you. And it's also worth mentioning that when Mr. Church told James, I have his friend, he said he frequently goes to Decatur to get heroin. Not that he goes to Decatur to buy heroin so that he can sell it to other people. Not that he has heroin right now and he will sell it to you. Not that he'll sell it to you at all. It was only a hypothetical, he goes to Decatur frequently to get heroin, talk to him. And lastly, at some point prior to giving Miller's number to James, James had repeatedly texted Mr. Church, mistakenly under the impression that he was somehow in the know. And most of her text messages go ignored. And as they get increasingly desperate asking him for help in obtaining drugs, he finally says, here, talk to this guy, it's Jay, and gives her the phone number. But earlier in the process, he tells her, he doesn't have the money to pay for it, you're going to have to pay for it up front before he goes and gets it. And that turns out to be incorrect. As it turns out, Miller goes to Decatur with Chris Miller, they obtain the heroin, they return, and they go with James to the bank and she withdraws money. So Mr. Church really has no idea what's going on. And he's simply there by association. He happens to know how to contact Miller. And really, at bottom, he's guilty of having his phone number and knowing how to contact a drug dealer. And that is not proving on a reasonable doubt that he aided and abetted or attempted to aid in the commission of court findings of delivery of a controlled substance. So on that basis, I would urge this court to reverse the judgment of the circuit court and vacate Mr. Church's conviction. What about representation? I'm sorry? What about his representation? The lawyer who represented him, do you have anything to say about that? Nothing that was raised in my brief hearing. So the thrust of your argument for Mr. Church is the accountability argument? There was another argument that he was denied his right to a jury trial. But unless you have specific questions about it, I wasn't going to address that. Well, previously, in a prior case here, you argued the second problem of plain error, where the error was so serious that, in my words, infected the judicial process. And didn't Mr. Church waive his right to a jury on the eve of trial? And in fact, the agreement to exchange his right to a trial for a bench trial was meaningless in light of the charges. Yes, that is a correct assessment of Mr. Church's error. And he didn't object to any of the evidence that went in at the bench trial? No, he didn't. So you don't think his representation was significant enough to argue it for us? Well, Your Honor, the short answer is, in the case of a stipulated bench trial, the record is so empty that it's difficult to say one way or another what counsel's reasoning was. I opted not to raise an effective assistance claim in Mr. Church's brief. Personally, I have some reservations, but I did not think the record was developed enough to actually assert that claim and have it be successful in the records. In a bench trial, the trial court is presumed to know the law, and it's difficult for us to reverse based on the facts that were presented. Much more difficult than a jury trial, would you agree? Or not? Maybe not. I'm not sure, Your Honor. I'm not sure I have a concrete answer to that. If Your Honors don't have any further questions, I have no further. We do. Thank you, counsel. Counsel? Good afternoon, Your Honor. Please support counsel. My name is Gadget Daly. I represent the people of the state of Illinois. Justice Cates, I'm going to go ahead and start off where you ended up. In fact, I sort of tangentially, or maybe not so tangentially, talked about ineffective assistance to counsel in the second issue. It seemed to me probably the proper framing in the particular issue about whether the decision to waive the jury was a proper one under the circumstances, and under the way the issue is framed by the defendant here, which is essentially that the quid pro quo for the waiver was a meaningless one. And the argument being that you can't be convicted of both inchoate and principal offense, so therefore the concession was largely meaningless. Do you agree with that? No, I don't agree with that. And there's a couple layers to my disagreement. Okay. My first layer of disagreement goes specifically to the assertion that it was in and of itself freestanding a meaningless concession. As the court's aware, of course, the inchoate offense is an incomplete offense, and it's got different elements than the completed offense, okay? If, let's say, the jury is charged, excuse me, the jury is instructed on both the inchoate offense and the principal offense, the jury could render a finding of guilt. It can't render a finding of guilt to both. That's a problem. But it could find to one or the other. By dismissing the inchoate offense and the state thus by limiting itself to proving the principal offense, as this court knows, an inchoate offense only requires essentially an agreement to commit an offense and then a step in furtherance of that, as opposed to the actual delivery of the controlled substance, which requires proof for the actual delivery, which is a higher, I think, standard evidentiary for the state to meet. The defendant in this way gained the benefit, number one, of not having this alternative type of offenses that the jury could consider and perhaps choose that, well, the state did not prove delivery, but we think it at least met the elements of the by limiting the state to having to prove only a greater offense from a standard of proving sufficient evidence for the defendant's guilt. But the theory of the state always was accountability. Correct. Well, I think... So, I mean, who are we kidding here, really? I don't disagree with that. I don't disagree with that. But when you look at the evidence, you can see how the state could go with the inchoate offense as well. Yeah, but that second offense wasn't charged until 135 days after the defendant was arrested. Yeah, well... And again, the defense counsel didn't object, right? Object on the basis of speaking trial... Object that the delay would be attributed to his client. I understand. I mean, 135 days in there of filing an amendment... Yeah, okay, so we agree on that. Yeah. I mean, you know... I'm not saying anything more. Okay, and that's that. But, yeah. Limiting myself to the argument before the court... Better. Yeah. We may not be the last time I'm here, Judge. The... This also, from the record, and this is the second layer in my response to that particular issue, is that we don't really know, really, exactly what motivated the defendant. The prosecutor represented the court conceivably that, well, this is partial, I believe, was the way it was framed as a result of this. We're going to dismiss the inchoate offense and proceed forward. But there are also other factors that I think you could look at objectively and say that could play into the defendant's mind. Number one, you'll note that the waiver occurred the day after the defense motion for a change of venue was requested, and that's largely due to the assertion of pre-trial publicity as it related to Jay Miller's prosecution, probably for homicidal death, drug-related homicidal death. Also, you'll note from the counsel's closing argument in this case, that counsel had argued that, you know, one of the reasons it went before the court is because they're making an argument that's probably better for a court than a jury, and that is, okay, my guy wasn't loud. He just wasn't bad enough. And, you know, and lawyers and judges, of course, can kind of see that distinction and sort of cleave that fine line between, you know, involved and accountable and guilty. That's something that juries may not necessarily find so easy to make. So there is a strategic basis, of course, and I think it's reflected in the attorney's comments that this court would point to, but ultimately what it comes down to in this layer of argument is that since we don't know, we're not really at that point that we can state definitively that this was not raised below. The defendant not made the argument below or asserted below that he's denied ineffective assistance of counsel on the basis of advice about whether to waive jury or not or give up the jury trial. But even, I mean, the delay attributable to the defendant on a late 135-day filing of a second count, all of the evidence at the bench trial came in by paper. They didn't even require production of the heroin. It was not deemed a significant enough thing to be admitted. Well, if I could address that real quick. I don't even know what time it's at. But I think that there's one of these things where sometimes you look at evidence and come to the conclusion that it's going to come in as it's going to come in, and so the argument becomes really more of a legal one based upon the fact that whether the defendant's activities here were satisfying the evidentiary standard for accountability. But we're standing here defending the ineffective assistance of counsel. I throw out something, you defend it. I mean, that is the real essence of my concern, okay, is that we are doing that. Correct. I mean, and I have not argued this is plain error. This is a plain error standard, but there sure seems to be a lot of it. Well, it's plain error with respect to, or the assertion is plain error with respect to the jury rule. The Supreme Court has been very favorable at courts, Your Honor. I can provide a site to that. But the Appellate Court and the Review of the Courts of An Act that go beyond the arguments presented before the court in rendering a decision. There's a procedure. There's a post-conviction process. And I'm sure, Your Honor, there's agreement, at least in that respect. So, you know, I'm not going to say anymore. But I will say just strictly on the basis of this record and this argument that's being made, I don't believe that there's reversible error on the strength of that. Now, of course, a lot of what we talk about just this case is moot. If this court ultimately finds the evidence was insufficient. In that regard, you know, we're talking about theory of accountability. The definition of accountability is substantially broad. It indicates that a defendant can be guilty if before or during a commission of defense and with the intent to promote or facilitate such commission, the defendant solicits, aids, or vets, agrees, or attempts to aid. Just as Casey said on numerous occasions in arguments I've witnessed, don't get in all the facts when you've got the facts. So I'm not going to belabor that point, other than just perhaps synthesize the argument of the state in this fashion. We have an instance where there have been a number of contacts between Jessica James and the defendant. It was clear that the relationship between them was one where the defendant was wanting to help her get drugs. When we get near to the knife in question of her obtaining these drugs from Jane Miller, there was a specific request whether, you know, she can get AIDS or heroin from him or his help. There's some cross-talk that goes on in terms of the messages that were introduced before the court. But the reduction of all those messages is essentially that, okay, well, look, I know what you want. I know a guy. He goes to cater. Let me see if I can get a hold of him. And then what happens is apparently, at least inferentially, he does get a hold of him because Jessica James also asks him, so does he know that I'm going to contact him? This is obviously in regards to obtaining heroin, and the defendant responds with affirmative. So it doesn't take much of a trier fact to read into those facts a belief that there was a conversation that had taken place between Jane Miller and the defendant with the specific objective that we're going to go ahead and convene a call on behalf of a connection or, if you will, a reference from the defendant to set up this drug deal that ultimately took place. Whether the defendant was aware of the specifics that occurred afterwards is immaterial. It doesn't really matter because in order to show accountability, you just have to establish that you facilitated before the commission of the offense. These are the exact words that come out of the accountability statute. And, of course, the balance of the evidence that was presented was largely a product of this proposition idea. The guy did go to cater right the morning after, essentially, these communications were taking place, and that he picked up Jessica James, got money, went back to see Jane Miller and James, and then ultimately that's where the drugs were found and the statute was done. So it's a real kind of quick way through the evidence in this case because this court has a record and can determine for itself if the state's evidence is sufficient. But we would submit, Your Honor, if I could just complete this thought, that the court's decision that the felon was correct under the theory of accountability is appropriate. Are there any further questions or comments? I don't believe so. Thank you. Thank you for your time. Counsel? Your Honors, I'd like to briefly touch on one point opposing counsel made about the jury waiver issue, and that is that based on his position, the record's not clear. There might have been other reasons why counsel waived Mr. Church's right to a jury trial. But the record only has one basis in it for that waiver, and that was the dismissal of that count. And anything beyond that is simply speculating. The record really gives no basis to give any credence to any other theory as to why the defense counsel did that other than explicitly what the state says. We're dismissing this count in exchange for the waiver of his right to a jury trial. Under the plain error doctrine, though, we cannot consider prong one or two unless we first find that, indeed, there was an error. That's absolutely correct. So what is the error in dismissing a count? It's not the actual dismissing of the count that's the error, Your Honor. It's the fact that Mr. Church chose to waive his jury trial right without being fully admonished about the benefits of his right and the consequences for abandoning it. And, of course, the thrust of that argument is the consequences were completely ephemeral. He was only going to ever be convicted of one count, of one crime. And dismissing the other count was meaningless. Even if he went to trial on both, he could still only be convicted and sentenced with one. So the point is... So the error is that he did not understand and waive his rights knowingly and voluntarily. Yes. Then you go to the first prong. How was he prejudiced by that? I might be wrong. I'm not sure I raised the first prong. Okay. Then talk to me about the second prong. The second prong, in terms of whether this affected fundamental rights and the integrity of the justice system, we're talking about a right that our Supreme Court has called one of the most revered rights we have, the right to a jury trial, the right to have your peers decide your guilt rather than a judge. And as our Supreme Court has said, that protects us against arbitrary prosecutions because we get to be judged by our peers. We can say, no, this is ridiculous. That is the right that's at stake. That's the harm that was caused here. As to the accountability issue, opposing counsel referenced that it was reasonable to infer that Mr. Church and Miller had discussed the actual drug deal, the actual transaction, and not just this person might be caught. And respectfully, that's not an inference. That's speculation. What the record does substantiate is that Mr. Church told Miller that Jessica James might be caught. He doesn't even specify why. He simply just tells him this person might be caught. And as I pointed out in the reply brief, the state seems to want to read a but-for sense of causation into the accountability statute. Mr. Church did something at some point, and the drug deal occurred after that. Therefore, he's accountable. And based on the reading of the accountability statute, and you have to solicit, aid, abet, attempt to aid, or agree in the commission of the delivery of a controlled substance. Why wouldn't this be an attempt to aid? Because it wasn't actually aiding in the planning or the commission of the offense. Delivery of a controlled substance has two elements. You have to possess the drugs, and you have to deliver them. And what Mr. Church did had no bearing on either of those elements. And accordingly, speculating anything beyond what's simply in the record, this Court should decline to do. I have nothing further, unless Your Honors have additional questions. I would simply ask that this Court reverse the judgment of the circuit court and vacate. I don't believe we have any more questions. Thank you. We haven't seen you before. Where are you from? Originally? No, did you drive down from Chicago? No, I live here. Okay, great. This is my aunt. We haven't met before. This is my first time up. Great. Oh, okay. Thank you. You're welcome. We've been seeing some folks from Chicago, so I was just wondering. I do live here in Chicago. Oh, okay. I live here. What a change. Okay. Well, we appreciate the briefs and arguments of counsel. Welcome. And we'll take the case under advisement.